UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| DELPHI CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-10415 (WGY) |
| ) | |
| LITEX, INC., ) | |
| ) | |
| Defendant. ) | |

**DELPHI CORPORATION'S RESPONSE TO LITEX'S STATEMENT OF
UNDISPUTED MATERIAL FACTS IN SUPPORT OF DELPHI
CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Plaintiff and Counterclaim Defendant Delphi Corporation responds to Litex's Statement Of Undisputed Material Facts submitted in support of Litex's Cross-Motion for Summary Judgment as follows:

1. Denied.[1] All accused statements are true or at most constitute non-actionable puffery. *See* Memorandum in Law in Support of Delphi's Motion for Summary Judgment at 10-11; Delphi's Opposition to Litex's Cross-Motion for Summary Judgment at 9-10.

2. Denied. Delphi admits that the quoted statements appear in the spokesperson statement dated July 20, 2001. Ekchian Decl., Ex. 1. Delphi denies Litex's characterization of this statement or the accused sentence; the document speaks for itself. First, the document is not a press release; it is a spokesperson's statement to be used to respond to potential public inquires regarding the *Litex I* action. *Id.* Litex provides no evidence that the spokesperson statement was ever publicly disseminated. Further, the spokesperson statement states that Delphi was

---

[1] Although Delphi denies many of the statements alleged by Litex, Delphi's denial of these statements does not create material issues of fact precluding summary judgment. The statements Delphi has denied are immaterial and/or simply constitute Litex's characterization of documents that speak for themselves.

1

developing non-thermal plasma catalysis components and systems, which is true. *See* SMF ¶¶ 1 (admitted), 2 (admitted), 4 (admitted), 6, 7 (admitted), 12 (admitted), 14 (admitted).[2] The statement does not claim that Delphi's NTP project was meeting success, as alleged by Litex.

3. Denied. As of July 20, 2001, Delphi was developing NTP components and systems. *See* SMF ¶¶1 (admitted), 2 (admitted), 4 (admitted), 6, 7 (admitted), 12 (admitted), 14 (admitted); Ekchian Decl., Exs. 8-10.

4. Denied in part. Delphi admits that the quoted phrase appears in the press release dated July 20, 2001. Ekchian Decl., Ex. 2. Delphi denies Litex's characterization of the press release or the accused phrase; the document speaks for itself. The phrase "significant reduction in emissions" refers to the laboratory (steady-state) test results presented in the press release: "In steady-state testing in a diesel vehicle, the NTP exhaust aftertreatment system demonstrated greater than 55 percent reduction in oxides of nitrogen emissions without the need to add additional hydrocarbons or other reductants to the exhaust stream as well as demonstrating a significant reduction in particulates." Ekchian Decl., Ex. 2. Delphi had achieved some laboratory results that suggested that NTP could be a potential viable diesel exhaust solution. SMF ¶ 4 (admitted).

5. Denied. There are no "statements." Litex merely claims that a single phrase in the press release is false. Ekchian Decl., Ex. 2. But the press release is true. Delphi's laboratory research demonstrated that NTP could be a potential viable diesel exhaust solution. SMF ¶4 (admitted).

---

[2] "SMF ¶___" refers to the Statement of Undisputed Materials Facts In Support of Delphi Corporation's Motion for Summary Judgment filed on May 31, 2005. The phrase "admitted" following a citation to "SMF ¶___" notes that Litex admitted this fact in Litex's Response to Delphi Corporation's Statement of Undisputed Material Facts filed on June 14, 2005.

2

6.Denied in part. Delphi admits that the quoted sentence appears in the remarks of J.T. Battenberg III dated September 12, 2001. Ekchian Decl., Ex. 3. Delphi denies Litex's characterization of the remarks or the accused sentence; the document speaks for itself. The remarks note numerous technologies that Delphi and the automotive industry are currently developing. Ekchian Decl. Ex. 3. The remarks do not focus on "Delphi's highlight technologies," as Litex alleges. *Id.*

7.Denied. There are no "statements." Litex merely claims that a single sentence in the remarks is false. Ekchian Decl., Ex. 3. But the press release is true. On September 12, 2001, Delphi was developing NTP as an exhaust aftertreatment technology. SMF ¶¶1 (admitted), 2 (admitted), 4 (admitted), 6, 7 (admitted), 12 (admitted), 14 (admitted); Ekchian Decl., Exs. 8-10.

8.Denied in part. Delphi admits that the quoted sentence appears in the press release dated July 20, 2001. Ekchian Decl., Ex. 4. Delphi denies Litex's characterization of the press release or the accused sentence; the document speaks for itself. The October 16, 2001 press release addresses environmentally related automotive technologies of which NTP is only one of the many technologies discussed. Ekchian Decl. Ex. 4.

9.Denied. There are no "statements." Litex merely claims that a single sentence in the press release is false. Ekchian Decl., Ex. 4. But the press release is true. On October 16, 2001, Delphi was developing NTP as an exhaust aftertreatment technology. SMF ¶¶1 (admitted), 2 (admitted), 4 (admitted), 6, 7 (admitted), 12 (admitted), 14 (admitted); Ekchian Decl., Exs. 8-10.

10.Denied in part. Delphi admits that the two quoted sentences appear in Delphi's 2001 annual report magazine. Ekchian Decl., Ex. 5. Delphi denies Litex's characterization of the annual report magazine and these sentences; the document speaks for itself.

3

11. Denied. In 2001, Delphi was developing NTP. SMF ¶¶1 (admitted), 2 (admitted), 4 (admitted), 6, 7 (admitted), 12 (admitted), 14 (admitted); Ekchian Decl., Exs. 8-10.

12. Denied. Delphi denies Litex's characterization of Mr. Runkle's deposition testimony; the deposition transcript speaks for itself. Ekchian Decl., Ex. 6, Runkle Dep. 51:-52:2. The referenced testimony only addresses press releases generally, not any specific Delphi press releases and public statements. Mr. Runkle actually testified as follows:

> Q. Are you aware of whether Delphi has ever issued an inaccurate press release?
>
> A. No, I don't know that we have that I know of. We obviously try to not issue inaccurate press releases, documents, or anything. We pride ourselves on accuracy, timeliness, so forth.

Ekchian Decl., Ex. 6, Runkle Dep. 51:10-15.

13. Denied. Delphi denies Litex's characterization of Mr. Battenberg's deposition testimony; the deposition transcript speaks for itself. Ekchian Decl., Ex. 7, 117:12-18, 118:18-23. The first cited testimony (Ekchian Decl., Ex. 7, 117:12-18) refers to the accuracy of the annual report magazine generally, and does not refer to specific statements about NTP. The second cited testimony (Ekchian Decl., Ex. 7, 118:18-23) refers to the magazine's use of the phrase "significantly reduces oxides of nitrogen emissions." Mr. Battenberg testified that this phrase refers to the research and development environment and as reported is true. Ekchian Decl., Ex. 7, 118:18-23.

14. Denied. Delphi denies Litex's characterization of these documents; the documents speak for themselves. None of the documents identified by Litex state that Delphi was confident about NTP. Ekchian Decl., Exs. 8-10. To the contrary, the documents indicate that Delphi's NTP project was not performing to targeted goals (Ekchian Decl., Ex. 8, p. 010144-059195, first diamond; Ex. 9, p. 010144-050375, first diamond), that development was lagging

(Ekchian Decl., Ex. 8, p. 010144-059196, first diamond), that favorable gas bench (laboratory) results did not translate to vehicle testing (Ekchian Decl., Ex. 8, p. 010144-059196, first dash; Ekchian Decl., Ex. 9, p. 010144-059195, third diamond); that Delphi only had plans to try to meet targeted goals (Ekchian Decl., Ex. 8, p. 010144-059196, third bullet; p. 010144-059197, third dash; Ex. 10, p. 010144-049687, second bullet); and that the NTP project lacked sufficient resources to complete the necessary research (Ekchian Decl., Ex. 8, p. 010144-059195, 3rd diamond).

15. Denied. Delphi denies Litex's characterization of this document; the document speaks for itself. The August 17, 2001 Interim Design Review actually states:

> "PSA goals are achievable (100% Euro IV) by December 2001 with "one-off" catalysts and prototype power supply – will not be to the level of product development required by ADP." Ekchian Decl., Ex. 8, p. 010144-059195.
>
> "Catalyst development has been lagging – Favorable gas bench results did not translate to vehicle testing…. Anticipate 10 NOx catalyst iterations to achieve 90% efficiency." Ekchian Decl., Ex. 8, p. 010144-059196.
>
> "Estimate June 2002 for Confirmation Testing of catalyst to be completed due to the expected catalyst iterations (10) required to achieve 80-90% NOx efficiencies." Ekchian Decl., Ex. 8, p. 010144-059197.

16. Denied. Delphi denies Litex's characterization of this document; the document speaks for itself. Ekchian Decl., Ex. 9. The October 20, 2001 Presentation to Toyota does not express Delphi's confidence in the ability of the NTP project to meet deadlines, as alleged by Litex. Ekchian Decl., Ex. 9.

17. Denied. Delphi denies Litex's characterization of this document; the document speaks for itself. Ekchian Decl., Ex. 10. The December 3, 2001 presentation does not confidently tout NTP, as alleged by Litex. Ekchian Decl., Ex. 10.

18.   Denied in part. Delphi admits that the quoted sentence appears in the April 11, 2002 email. Delphi's denies Litex's characterization of the document; the document speaks for itself. Ekchian Decl., Ex. 11. Joseph Bonadies was the NTP project manager, not the "head of the NTP program." The April 2002 email confirms that Delphi cancelled further development of NTP catalyst in March/April 2002. SMF ¶15. It does not identify "the timing of Delphi's change of course," as Litex alleged. Ekchian Decl., Ex. 11.

19.   Admitted.

20.   Denied in part. Delphi admits that the quoted testimony appears in the deposition transcript of Dr. Kupe. Delphi denies Litex's characterization of this testimony; the deposition transcript speaks for itself. Ekchian Decl., Ex. 13. Dr. Kupe's testimony confirms that Delphi continued to research NTP into March 2002 and cancelled further NTP catalyst development in March 2002. SMF ¶15 (admitted). Dr. Kupe did not testify that "it was not until March, 2002 that Delphi realized it did not have a viable technology," as Litex alleged. Ekchian Decl., Ex. 13, Kupe Dep. pp. 360:17-361:2, 363:22-365:15.

21.   Denied. Delphi admits that the quoted testimony is from the testimony of Dr. Botti at the arbitration. However, the cited testimony is incomplete and excludes testimony by Dr. Botti. Delphi denies Litex's characterization of this testimony; the transcript speaks for itself. Ekchian Decl., Ex. 14, Arb. Hearing, p. 835:21-836:17; 890:3-891:6. Dr. Botti testified that he had very minimal confidence that the NTP project would exit ADP in July 2001 because of some disappointing test results. At no time did Dr. Botti testify that "he was prepared to terminate the NTP project as a failure," as Litex alleges. Ekchian Decl., Ex. 14, Arb. Hearing, p. 835:21-836:17; 890:3-891:6.

22. Denied in part. Delphi admits that the quoted testimony is from the testimony of Mr. Bonadies at the arbitration. Mr. Bonadies explained that his skepticism regarding NTP related to the project's performance, which did not meet certain project goals.

23. Denied. During *Litex I*, Delphi disclosed that the NTP project was not meeting project goals and was experiencing diminishing success. SMF ¶¶ 3, 6, 9 (admitted). Delphi also disclosed that in 2001, it had some doubts about the success of its NTP project and its commercial viability. SMF ¶¶ 11-13 (admitted).

24. Admitted.

25. Denied. During *Litex I*, Delphi disclosed that its upper management knew of the diminishing success of the NTP project and the problems associated with it in 2001. SMF ¶9 (admitted).

26. Admitted.

27. Denied. During *Litex I*, Litex alleged that Delphi's press releases and other activities were false and damaged Litex. SMF ¶¶ 22 (admitted), 23, 24-25 (admitted), 26, 27-31 (admitted). Litex did not rely on any statements regarding Delphi's NTP project in deciding to execute the Release. SMF ¶¶ 41-42 (admitted).

28. Denied. The 2001 statements are true. *See supra* ¶¶ 1-11. During *Litex I*, Litex alleged that Delphi's press releases and other activities were false and damaged Litex. SMF ¶¶ 22 (admitted), 23, 24-25 (admitted), 26, 27-31 (admitted). Litex did not rely on any statements regarding Delphi's NTP project in deciding to enter the Release. SMF ¶¶ 41-42 (admitted).

29. Denied. Only one patent was in dispute during the arbitration. Litex's damages expert premised Litex's damages claim on numerous theories including the contention that

7

Delphi's allegedly false press statements damaged Litex's licensing and business opportunities. SMF ¶27 (admitted).

30. Admitted in part. Litex's CEO Leon Ekchian testified during *Litex I* that, among other things, Delphi's representation that it developed NTP was false, that Delphi's overly optimistic statements about NTP were false, and that Delphi's alleged negative statements regarding Litex's product was false, and that these allegedly false statements harmed Litex. SMF ¶¶22 (admitted), 23, 24-25 (admitted), 26.

31. Denied. During *Litex I*, Litex knew that Delphi set certain goals for the NTP project and that the NTP project was not meeting these goals. SMF ¶¶ 3, 6.

32. Denied in part. Dr. Kupe's deposition testimony is not the "opposite" of Dr. Botti's arbitration testimony. *Compare* Ekchian Decl., Ex. 14 Arb. Hrng., p. 840:17-841:10 *to* Ekchian Decl., Ex. 13, Kupe Dep. 107:6-111:24. Dr. Botti merely testified at the arbitration that he cut a much larger proposed 2002 budget for NTP in half. Ekchian Decl., Ex. 14 Arb. Hrng., p. 840:17-841:1.

Respectfully submitted,

**DELPHI CORPORATION**

By its attorneys,

*/s/ Matthew C. Hurley*
H. Joseph Hameline, BBO # 218710
Matthew C. Hurley, BBO # 643638
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

8

## CERTIFICATE OF SERVICE

I, Matthew C. Hurley, do hereby certify that on June 27, 2005, I electronically filed a true copy of this document with the Court. I further certify that counsel for Litex, Inc. is registered to receive a copy of this document by operation of the Court's electronic filing system.

*/s/ Matthew C. Hurley*

LIT 1529044v1